1  N. Thane Bauz (SBN 188439)
   (thane@bauziplaw.com)
2  **BAUZ IP LAW LLP**
3  2835 Inverness Drive
   La Jolla CA  92037
4  Tel: (858) 987-4028
   Fax:  (858) 642-0072
5
6  Attorneys for Plaintiff
   WINN SOLUTIONS, LLC

7

8

9                   **UNITED STATES DISTRICT COURT**

10               **SOUTHERN DISTRICT OF CALIFORNIA**

11

12  WINN SOLUTIONS, LLC,              CASE NO.: **'17CV106  LAB JLB**

13                  Plaintiff,

14                                    **COMPLAINT FOR DECLARATORY
    vs.                               JUDGMENT OF NON-INFRINGEMENT
15                                    AND INVALIDITY**

16  SHIPPING & TRANSIT LLC,

17                  Defendant         **DEMAND FOR JURY TRIAL**

18

19          Plaintiff WINN Solutions LLC ("WINN"), for its complaint against Shipping and

20  Transit LLC, ("S&T") to the best of its knowledge, information and belief, and through its

21  attorneys, alleges as follows:

22                          <u>**NATURE OF ACTION**</u>

23          1.      This is an action for declaratory judgement of invalidity and non-infringement

24  of U.S. Patent No. 7,400,970 ("the '970 Patent"); reexamined U.S. Patent No. 6,904,359

25  ("the '359 Patent"), U.S. Patent No. 6,415,207 ("the '207 Patent") and U.S. Patent No. 6,

26  763,299 ("the '299 Patent") (collectively the "Patents-in-Suit").

27          2.      Copies of the '970 Patent, the '359 Patent, the '207 Patent, and the '299

28  Patent are attached hereto as Exhibits A-D respectively.

## PARTIES

**WINN Solutions LLC**

3. Plaintiff WINN Solutions is a limited liability company formed under the laws of California. All of WINN's personnel and operations are based in San Diego, California.

4. WINN is dedicated to programing cloud-based barcode tracking software solutions. WINN's software products are designed to simplify its customers often complicated and challenging process of organizing and tracking deliverables, such as mail and packages, within the customers' facilities.

5. One software product, called Winn Item Tracking System, or WITS, assists WINN's customers with the tracking of deliverables within the customers' facilities.

6. WINN serves a diverse logistics customer base in government, healthcare, education, retail and entertainment sectors. Such entities use WINN software solutions to help monitor the chain of custody of deliverables within their respective organizations.

7. On information and belief, S&T is fully aware of WINN's business, including the fact that WINN is in the business of offering customized software-based solutions for its customers' intra-business mail routing systems.

**Shipping and Transit LLC**

8. S&T is a Florida limited liability company. S&T was formerly known as ArrivalStar S.A. and Melvino Technologies Limited. Melvino Technologies Limited ("Melvino") is a corporation formed under the laws of British Virgin Islands of Tortola. ArrivalStar SA is a corporation organized under the laws of Luxembourg ("ArivalStar").

9. On information and belief, members of S&T include Peter Sirianni and

Martin Kelly Jones, both of whom were affiliated with S&T's predecessors, including but not limited to ArrivalStar.

10.    On information and belief, S&T owns and/or controls a portfolio of at least 34 patents.

11.    On information and belief, S&T and its predecessor ArrivalStar have sent more than six hundred and fifty demand letters to businesses and has filed over three hundred patent infringement suits against defendants.  Upon information and belief, S&T and its predecessor ArrivalStar have sent demand letters to thousands of additional parties regarding the Patents-in-Suit.

12.    On information and belief, S&T makes no products and sells no services, and S&T's sole business is to enforce the Patents-in-Suit and other patents it owns/or controls.

13.    On information and belief, since 2005 S&T has entered into over eight hundred settlement agreements to its technology, many of which were executed after patent infringement actions were filed by S&T.

## JURISDICTION AND VENUE

14.    This Court has jurisdiction over these claims pursuant to 28 U.S.C. §§ 1338, 1331 and 2201 because the Complaint states claims arising under an Act of Congress relating to patents, including but not limited to 35 U.S.C. § 271 and seeks relief under the Federal Declaratory Judgment Act.

15.    This Court has jurisdiction over the Plaintiff's declaratory judgment claim pursuant to 28 U.S.C. §§ 2201 *et seq.* based on Defendants threats to sue Plaintiff for patent infringement, thereby giving rise to an actual case or controversy under 28 §§ 2201 and 2202.

16.    According to S&T's counsel, S&T and its predecessors have filed and litigated numerous lawsuits in California involving the Patents-in-Suit.  On

information and belief, it derived substantial licensing revenue from California companies as part of its patent assertions, including assertion of the Patents-in-Suit.

17. On information and belief, S&T has initiated a multitude of lawsuits, including lawsuits in California.

18. On December 14, 2016 S&T purposefully transmitted a letter to WINN ("Demand Letter") alleging patent infringement of the Patents-in-Suit, some of which had expired, lapsed or otherwise have their validity questioned in Court and before the Patent Trial and Appeal Board. Without referencing this information, S&T demanded that WINN pay it for alleged infringement of the Patents-In-Suit. A copy of the Demand Letter is attached as Exhibit E.

19. S&T's Demand Letter further stated that "[if S&T's attorney] does not hear from you, your company's lawyer, or another company representative [within 30 days of receiving this letter, S&T's attorney] will assume that your company is not interested in an amicable resolution . . . ." Exhibit E.

20. On January 16, 2007, in response to WINN's efforts to better understand S&T's allegations, a representative of S&T sent WINN's counsel a one sentence email that included an attachment entitled "Settlement, Release and Licensing Agreement" ("Draft Settlement Agreement"). The Draft Settlement Agreement is attached as Exhibit F. S&T's representative indicated that S&T's offer to execute the Draft Settlement Agreement will remain open for only four days. Exhibit F.

21. In light of S&T's accusations and demands, including but not limited to the demand to execute a settlement agreement within four days, and S&T's litigious nature, S&T has placed a cloud over WINN's business and has created a concrete and immediate justiciable controversy between WINN and S&T.

22. There exists an actual controversy between WINN, on the one hand,

and S&T on the other hand, for claims under the Patent Laws of the United States of America, 35 U.S.C. § 1 *et seq*. WINN seeks relief pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2202 and 2202.

23. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b), 1391(c), and 1400(b) because, in part, S&T conducts or has regularly conducted business in this judicial district, and/or, because a substantial part of the events or omissions giving rise to this action occurred in this judicial district.

## FACTUAL BACKGROUND

**S&T's Actions and The Lack of a Reasonable Investigation Establish The Existence of a Concrete and Immediate Justiciable Controversy**

24. S&T's Demand Letter alleges infringement of the four Patents-in-Suit. Prior to S&T's Demand letter, WINN had no knowledge of S&T's patents. The Demand letter is addressed to WINN's former President, Mr. Peter Casserly. Mr. Casserly passed away in 2013.

25. On information and belief, S&T through its Demand Letter, falsely claimed that "two or more people within [S&T] have done extensive research to determine [WINN's] patent usage." Exhibit E. S&T's Demand Letter contains numerous factual errors as to WINN's business and technology, all of which are readily ascertainable from information in the public domain.

26. On January 16, 2017, S&T's licensing agent reiterated the representation in S&T's Demand Letter that a "team" of S&T professionals reviewed WINN's products and services and that they concluded that WINN infringes the same.

27. On January 16, 2017, S&T's licensing agent maintained that WINN has infringed the Patents-in-Suit and demanded a response to S&T's settlement letter within four days. S&T's licensing agent was unwilling to discuss S&T's allegations

set out in its Demand Letter with one exception.  S&T's licensing agent alleged that the "vehicle" as recited in the claims of the Patents-in-Suit covers packages and mail.

28.     In light of the intrinsic record relating to the Patents-in-Suit, and S&T's Demand Letter, the claim term "vehicle" cannot cover packages and mail. Such an assertion is legally and factually baseless.

29.     On information and belief, S&T did not undertake "extensive research" on WINN's products.  For example, S&T's Demand Letter includes claim charts having one or more blatant errors.

30.     A reasonable person would not have alleged that WINN's products and services infringe any claims of the Patents-in-Suit.  By or before December 14, 2016, readily available public information reveals that WINN does not practice the technology disclosed and claimed in the Patents-in-Suit.

31.     S&T's Demand letter sets out four independent claims, one each from the asserted Patents-in-Suit with corresponding claim charts.  Claim 5 of the '207 Patent recites one or more claim elements that include limitations directed to hardware.  Claim 41 of the '359 Patent recites one or more claim elements that include limitations directed to hardware.  Claim 79 of the '299 patent recites one or more claim elements that include limitations directed to hardware.  Claim 1 of the '970 patent recites one or more claim elements that include limitations directed to hardware.

32.     According to S&T's attorneys, Mr. Martin Kelly Jones, the inventor and an owner of S&T, has over 30 patents and generally his inventions are directed to systems and methods that enable users to receive important vehicle and/or shipment status and arrival information through the use of common communication devices, including telephones, wireless communication devices, PDAs, and PCs.

33.     There is readily available information in the public domain

establishing that WINN does not make, use, sell or offer to sell systems or otherwise practice methods that include common communication devices.

34.    On information and belief, S&T knowingly and intentionally withheld material facts concerning the asserted Patents-in-Suit from WINN, including: (1) one or more of the Patents-in-Suit have expired and/or lapsed for failure to pay maintenance fees; (2) one Patent-in-Suit that is the subject of a substantively detailed *inter partes* review petition pending before the Patent Trial & Appeal Board of the United States Patent and Trademark Office; (3) two Patents-in-Suit were challenged in Court as being directed to unpatentable subject matter; and (4) the patent claims of one Patent-in-Suit were construed by a Special Master.

35.    On information and belief, S&T's Demand Letter (Exhibit E) is a form letter than has been sent to numerous entities. On information and belief, in its Demand letter, S&T merely cut and pasted "WINN" in lieu of the name of one or more entities that S&T has accused of infringement.

36.    Research by one or more people at S&T, in light of publicly available information, would have led to the conclusion that WINN's products and services do not possess all the elements of Claim 5 of the '207 Patent.

37.    Research by one or more people at S&T, in light of publicly available information, would have led to the conclusion that WINN's products and services do not possess all the elements of Claim 41 of the '359 Patent.

38.    Research by one or more people at S&T, in light of publicly available information, would have led to the conclusion that WINN's products and services do not possess all the elements of Claim 79 of the '299 Patent.

39.    Research by one or more people at S&T, in light of publicly available information, would have led to the conclusion that WINN's products and services do not possess all the elements of Claim 1 of the '970 Patent.

40.     On information and belief, S&T did not have people knowledgeable in patent law conduct infringement studies of WINN's products and services.

41.     S&T's allegations of WINN's infringement of claim 1 of the '970 Patent are baseless, in part, because WINN does not make, use, sell or offer to sell such "system[s]." Additionally, WINN's products and services do not meet the claim limitations of "monitoring of travel data associated with a vehicle" or "means for monitoring the travel data" associated with a vehicle. For these and additional reasons, WINN seeks a declaration of non-infringement of the '970 Patent as will be demonstrated at trial.

42.     S&T did not disclose that claim 41 of the '359 patent was reexamined. *See* Exhibit E. Nonetheless, S&T's allegations of WINN's infringement of claim 41 of the '359 Patent are baseless. WINN's product and services do not meet the claim limitations of "means for establishing a second communication link between the system and the user upon occurrence of the one or more events achieved by the mobile vehicle during travel" or "notification relating to the status of a mobile vehicle in relation to a location." WINN seeks a declaration of non-infringement of the '359 Patent for these and other reasons to be demonstrated at trial.

43.     S&T's allegations of WINN's infringement of claim 79 of the '299 Patent are baseless. WINN does not make, use, sell or offer to sell such "system[s]." Similarly, WINN's products and services to do not meet the claim limitation of "means for monitoring travel data associated with a vehicle in relation to the delivery information." WINN seeks a declaration of non-infringement of the '299 Patent for these and other reasons to be demonstrated at trial.

44.     S&T's allegations of WINN's infringement of claim 5 of the '207 Patent are baseless. By way of example, WINN does not make, use, sell or offer to sell such "system[s]." Similarly WINN's products and services do not meet the

claim limitation of "status information associated with a vehicle, such status information indicative of a current proximity of [an] identified vehicle." WINN seeks a declaration of non-infringement of the '207 Patent for these and other reasons to be demonstrated at trial.

45.     S&T's baseless allegations as to patent infringement of WINN's products and services raise a concrete and immediate justiciable controversy.

**S&T's Actions in Light of the Intrinsic and Extrinsic Evidence of the Patents-in-Suit Establish a Concrete and Immediate Justiciable Controversy**

46.     U.S. Patent No. 7,400,970 ("the '970 Patent"); reexamined U.S. Patent No. 6,904,359 ("the '359 Patent"), U.S. Patent No. 6,415,207 ("the '207 Patent") and U.S. Patent No. 6, 763,299 ("the '299 Patent") are at issue in this action. *See* Exhibits A, B, C, and D.

47.     S&T alleges that it owns all rights, title and interest in, and/or has standing to sue for enforcement of the Patents-in-Suit.

48.     The '970, the '359 and the '299 Patent all claim the benefit of U.S. Pat. No. 5,400,020 through a series of continuations, continuations-in-part, and/or divisionals. Although the '207 Patent claims similar subject matter to the '970, the '359, and the '299 Patent, there is no patent family relationship between the '207 Patent and the other Patents-in-suit. Consequently, the '970, the '359 and the '299 Patents are prior art to the '207 patent.

49.     According to S&T's attorneys, Mr. Martin Kelly Jones, the inventor and an owner of S&T, has over thirty patents and his inventions are directed to systems and methods that enable users to receive important vehicle and/or shipment status and arrival information through the use of common communication devices, including telephones, wireless communication devices, PDAs, and PCs. Exhibit E.

50.     S&T has previously characterized its patents as "generally relat[ing] to

systems and methods for providing electronic messages to users concerning the travel status of vehicles."

51.     The '359 Patent and the '299 Patent note alleged deficiencies in the prior art, specifically pointing to the deficiencies in package tracking systems such as those used by UPS and FedEx:

> [I]ndividuals already try to project the arrival of a vehicle or package by online package tracking services provided by commercial delivery companies, such as the United Parcel Service (UPS), Federal Express (FED-X), and others. Although traditional methods used in determining when a vehicle are [sic] to arrive at a stop is effective in some cases, a more precise method using a pre-warning message can be more helpful in providing accurate information. Currently, such vehicles, in order to ensure delivery of all packages in the same day, keep loads at a lower capacity in order to compensate for waiting times encountered at a percentage of vehicle stops when customers react slowly to their arrival.

'359 Patent, Exhibit B, col. 2:20-33; '299 Patent, Exhibit D, col 2:20-33.

52.     The '970 Patent recites a similar alleged deficit in the prior art methods:

> Yet another example is in the commercial overnight package delivery industry, wherein packages are delivered on a tight schedule. Customers oftentimes wait on delivery of important time-critical packages not knowing precisely when the delivery will occur. A system informing the customer of the precise arrival time is desirable in order to improve customer service and to allow the customer to better rely on the estimated arrival time of the delivery.

'970 Patent, Exhibit A, col. 2:32-39.

53.     The '207 Patent begins by noting that in the prior art:

> [I]t is possible for users to call a central processing station to obtain information on the status of a vehicle of interest. For example, it is possible for a user to call an airline or a bus depot and find out whether an airplane or bus is on or off schedule. In some situations, a human operator at the processing station (e.g., the airline or bus depot) receives the call from the user who asks the operator for information

'207 Patent, Exhibit C, col. 1:22-29.

54.     The '207 Patent further notes that in the prior art:

> In other situations, the status information is automatically provided to the user after the user has submitted a status information request, thereby eliminating the need of human interaction at the processing station . . . . The computer then automatically retrieves information pertaining to the status of the vehicle identified by the user's inputs and provides this information to the user.

'207 Patent, Exhibit C, col. 1:33-46.

55.     The '207 Patent alleges that providing "either the operator or the computer with information identifying which vehicle is of interest to the user." '207 Patent, col. 1:47-49.  Further, "[i]t would be desirable for the processing station to automatically provide the user with status information on a particular vehicle without the user having to provide a vehicle identifier."  The '207 Patent goes on to describe the slightest modifications to the prior utilizing a computer.  *See*, e.g., '207 Patent, col. 1:22-2:25; Figure 1.  Such modifications were well-known in the prior art.

56.     On information and belief, the Patents-in-Suit are invalid under the Patent Laws of the United States of America, 35 U.S.C. § 1 *et seq*., including but not limited to §§ 101, 102, 103 and 112.

**The '970 Patent**

57.     The '970 Patent is entitled "System and Method for an Advance Notification System for Monitoring and Reporting Proximity of a Vehicle."  It issued on July 15, 2008.

58.     The '970 Patent expired no later than July 1, 2013.  In addition, on information and belief, S&T and/or its predecessors failed to pay maintenance fees due on the '970 Patent thereby causing it to have lapsed.  On information and belief, the failure to pay maintenance fees was intentional.

59.     On information and belief, S&T is fully aware that the '970 Patent has

expired and its term has lapsed.  On information and belief, S&T was fully aware that the '970 Patent was expired and had lapsed prior to the time that it transmitted a Demand Letter to WINN.

### The '359 Patent

60.     The '359 Patent is entitled "Notification Systems and Methods with User-Definable Notifications Based Upon Occurance [sic] of Events."  The '359 Patent issued on June 7, 2005.

61.     The '359 Patent was the subject of an *inter partes* reexamination. Upon reissuance, the claims of the '359 Patent were narrowed.  *See* Exhibit B

62.     The '359 Patent expired no later than May 2, 2015.  On information and belief, S&T is fully aware that the '359 Patent expired.

### The '207 Patent

63.     The '207 Patent is entitled "System and Method for Automatically Providing Vehicle Status Information."  It issued on July 2, 2002.

64.     S&T sued Loginext Solutions Inc.  In response, Loginext filed a motion setting out facts and argument that the claims of the '207 Patent falls short of the legal requirements of 35 U.S.C. §101 and the Supreme Court's decision in *Alice Corp. Pty. Ltd. V. CLS Bank Int'l*, 134 S. Ct. 2347 (2014) and are therefore ineligible for patent protection.

65.     S&T also sued Neptune Cigars, Inc.  In response, Neptune Cigars similarly filed a motion setting out facts and argument that the claims of the '207 Patent falls short of the legal requirements of 35 U.S.C. § and are therefore ineligible for patent protection.

66.     In July of 2016, Unified Patents Inc. served S&T with a petition in the U.S. Patent Office for *inter partes* review of the '207 Patent.  The petition presents detailed facts and analysis demonstrating that all claims of the '207 Patent are invalid

in light of the prior art.

67.    In its petition, Unified Patents Inc. presents facts and argument that the '207 Patent is obvious in light of U.S. Patent No. 5,668,543 when combined with other prior art.  Martin Kelly Jones is the named inventor of U.S. Patent No. 5,668,543.  He is also the named inventor of the Patents-in-Suit.  U.S. Patent No. 5,668,543 has been assigned to S&T.  On information and belief, S&T's counsel is and has been fully aware of the petition filed by Unified Patents Inc.

**The '299 Patent**

68.    The '299 Patent is entitled "Notification Systems and Methods with Notifications Based Upon Prior Stop Locations."  It issued on July 13, 2004.

69.    The '299 Patent expired no later than July 1, 2013.  On information and belief, S&T and/or its predecessors failed to pay maintenance fees due on the '299 Patent thereby causing it to have lapsed.  On information and belief, the failure to pay maintenance fees was intentional.

70.    On information and belief, S&T was fully aware that the '299 Patent was expired and had lapsed prior to the time that it transmitted a Demand Letter to WINN.

71.    After being sued by S&T, Neptune Cigars, Inc. filed a motion setting out facts and argument that the claims of the '299 Patent fall short of the legal requirements of 35 U.S.C. § 101 and the Supreme Court's decision in *Alice Corp. Pty. Ltd. V. CLS Bank Int'l*, 134 S. Ct. 2347 (2014) and are therefore ineligible for patent protection.

72.    S&T's assertion that "[the Patents-in-Suit] are strong in both invalidity [sic] and scope [and therefore S&T's attorneys] sincerely hope for an amicable resolve," raises a concrete and immediate justiciable controversy as S&T's assertion, in part, associated with the invalidity, lapse and expiration of S&T's patents.

## <u>COUNT I</u>

### Declaratory Judgment of Non-Infringement of the '970 Patent

73.     Paragraphs 1 to 72 are incorporated herein as set forth above.

74.     A substantial, immediate and real controversy exists between WINN and S&T based, in part, on S&T's Demand Letter and the representations therein, its self-imposed deadline for WINN to execute a litigation settlement agreement, and WINN's unequivocal assertion that it does not infringe any valid claim of the '970 Patent.

75.     WINN does not infringe, and has not infringed the '970 Patent pursuant to 35 U.S.C. § 271, literally or under the doctrine of equivalents, by making, using, selling or offering to sell WINN's products and services.

76.     Prior to December 14, 2016, WINN had no constructive or actual notice of the Patents-in-Suit.  Prior to December 14, 2016, WINN had no knowledge of the Patents-in-Suit.

77.     WINN is entitled to a judgment declaring that it does not infringe, and has not infringed, the '970 Patent by making, using, selling or offering to sell WINN's products and services, either literally or under the doctrine of equivalents.

## <u>COUNT II</u>

### Declaratory Judgment of Invalidity of the '970 Patent

78.     Paragraphs 1 to 77 are incorporated herein as set forth above.

79.     A substantial, immediate and real controversy exists between WINN and S&T based, in part, on S&T's Demand Letter and the representations therein, its self-imposed deadline for WINN to execute a litigation settlement agreement, WINN's unequivocal assertion that it does not infringe any valid claim of the '970 Patent.

80.     The Patents-in-Suit are invalid under the Patent Laws of the United

States of America, 35 U.S.C. § 1 *et seq.*, including but not limited to §§ 101, 102, 103 and 112.

81.     The claims of the '970 Patent are invalid pursuant to 35 U.S.C. §101, in part, because the '970 Patent claims are directed to abstract ideas implemented on a computer that do not transform those ideas into patentable subject matter.

82.     The '970 Patent is invalid for failure to meet the legal requirements of 35 U.S.C. §112.

83.     The claims of the '970 Patent are invalid under 35 U.S.C. §103, in part, because the problems allegedly solved by the '970 Patent would have been predictable to solve by a person of ordinary skill in the art in view of the prior art and/or was otherwise not novel as required by 35 U.S.C. §102.

## COUNT III

### Declaratory Judgment of Non-Infringement of the'359 Patent

84.     Paragraphs 1 to 83 are incorporated herein as set forth above.

85.     A substantial, immediate and real controversy exists between WINN and S&T based, in part, by S&T's Demand Letter and the representations therein, its self-imposed deadline for WINN to execute a litigation settlement agreement, and WINN's unequivocal assertion that it does not infringe any valid claim of the '359 Patent.

86.     WINN does not infringe, and has not infringed the '359 Patent pursuant to 35 U.S.C. § 271, literally or under the doctrine of equivalents, by making, using, selling or offering to sell WINN's products and services.

87.     Prior to December 14, 2016, WINN had no constructive or actual notice of the Patents-in-Suit.  Prior to December 14, 2016, WINN had no knowledge of the Patents-in-Suit.

88.     WINN is entitled to a judgment declaring that it does not infringe, and

has not infringed, the '359 Patent by making, using, selling or offering to sell WINN's products and services, either literally or under the doctrine of equivalents.

## COUNT IV

### Declaratory Judgment of Invalidity of the '359 Patent

89.     Paragraphs 1 to 88 are incorporated herein as set forth above.

90.     A substantial, immediate and real controversy exists between WINN and S&T based, in part, on S&T's Demand Letter and the representations therein, its self-imposed deadline for WINN to execute a litigation settlement agreement, and WINN's unequivocal assertion that it does not infringe any valid claim of the '359 Patent.

91.     The Patents-in-Suit are invalid under the Patent Laws of the United States of America, 35 U.S.C. § 1 *et seq*., including but not limited to §§ 101, 102, 103 and 112.

92.     The claims of the '359 Patent are invalid pursuant to 35 U.S.C. §101, in part, because the '359 Patent claims are directed to abstract ideas implemented on a computer that do not transform those ideas into patentable subject matter.

93.     The'359 Patent is invalid for failure to meet the legal requirements of 35 U.S.C. §112.

94.     The claims of the '359 Patent is invalid under 35 U.S.C. §103, in part, because of the problems allegedly solved by the '359 Patent would have been predictable to solve by a person of ordinary skill in the art in view of the prior art and/or was otherwise not novel as required by 35 U.S.C. §102.

## COUNT V

### Declaratory Judgment of Non-Infringement of the '207 Patent

95.     Paragraphs 1 to 94 are incorporated herein as set forth above.

96.     A substantial, immediate and real controversy exists between WINN

and S&T based, in part, on S&T's Demand Letter and the representations therein, its self-imposed deadline for WINN to execute a litigation settlement agreement, and WINN's unequivocal assertion that it does not infringe any valid claim of the '207 Patent.

97.     WINN does not infringe, and has not infringed the '207 Patent pursuant to 35 U.S.C. § 271, literally or under the doctrine of equivalents, by making, using, selling or offering to sell WINN's products and services.

98.     Prior to December 14, 2016, WINN had no constructive or actual notice of the Patents-in-Suit.  Prior to December 14, 2016, WINN had no knowledge of the Patents-in-Suit.

99.     WINN is entitled to a judgment declaring that it does not infringe, and has not infringed, the '207 Patent by making, using, selling or offering to sell WINN's products and services, either literally or under the doctrine of equivalents.

## COUNT VI

### Declaratory Judgment of Invalidity of the '207 Patent

100.     Paragraphs 1 to 99 are incorporated herein as set forth above.

101.     A substantial, immediate and real controversy exists between WINN and S&T based, in part, on S&T's Demand Letter and the representations therein, its self-imposed deadline for WINN to execute a litigation settlement agreement, and WINN's unequivocal assertion that it does not infringe any valid claim of the '207 Patent.

102.     The Patents-in-Suit are invalid under the Patent Laws of the United States of America, 35 U.S.C. § 1 *et seq*., including but not limited to §§ 101, 102, 103 and 112.

103.     The claims of the '207 Patent are invalid pursuant to 35 U.S.C. §101, in part, because the '207 Patent claims are directed to abstract ideas implemented on

a computer that do not transform those ideas into patentable subject matter.

104. The '359 Patent is invalid for failure to meet the legal requirements of 35 U.S.C. §112.

105. The claims of the '207 Patent are invalid under 35 U.S.C. §103, in part, because the problems allegedly solved by the '207 Patent would have been predictable to solve by a person of ordinary skill in the art in view of the prior art and/or was otherwise not novel pursuant to 35 U.S.C. §102.

## COUNT VII

### Declaratory Judgment of Non-Infringement of the '299 Patent

106. Paragraphs 1 to 105 are incorporated herein as set forth above.

107. A substantial, immediate and real controversy exists between WINN and S&T based, in part, on S&T's Demand Letter and the representations therein, its self-imposed deadline for WINN to execute a litigation settlement agreement, and WINN's unequivocal assertion that it does not infringe any valid claim of the '299 Patent.

108. WINN does not infringe, and has not infringed the '299 Patent pursuant to 35 U.S.C. § 271, literally or under the doctrine of equivalents, by making, using, selling or offering to sell WINN's products and services.

109. Prior to December 14, 2016, WINN had no constructive or actual notice of the Patents-in-Suit. Prior to December 14, 2016, WINN had no knowledge of the Patents-in-Suit.

110. WINN is entitled to a judgment declaring that it does not infringe, and has not infringed, the '299 Patent by making, using, selling or offering to sell WINN's products and services, either literally or under the doctrine of equivalents.

## COUNT VIII

### Declaratory Judgment of Invalidity of the '299 Patent

111.    Paragraphs 1 to 110 are incorporated herein as set forth above.

112.    A substantial, immediate and real controversy exists between WINN and S&T based, in part, on S&T's Demand Letter and the representations therein, its self-imposed deadline for WINN to execute a litigation settlement agreement, and WINN's unequivocal assertion that it does not infringe any valid claim of the '299 Patent.

113.    The Patents-in-Suit are invalid under the Patent Laws of the United States of America, 35 U.S.C. § 1 *et seq*., including but not limited to §§ 101, 102, 103 and 112.

114.    The claims of the '299 Patent are invalid pursuant to 35 U.S.C. §101, in part, because the '299 Patent claims are directed to abstract ideas implemented on a computer that do not transform those ideas into patentable subject matter.

115.    The '299 Patent is invalid for failure to meet the legal requirements of 35 U.S.C. §112.

116.    The claims of the '299 Patent are invalid under 35 U.S.C. §103, in part, because the problems allegedly solved by the '299 Patent would have been predictable to solve by a person of ordinary skill in the art in view of the prior art and/or was otherwise not novel pursuant to 35 U.S.C. §102.

# PRAYER FOR RELIEF

Wherefore, WINN respectfully requests that a judgment be entered against Defendant Shipping & Transit as follows:

A.      That judgment be entered in favor of Plaintiffs and against Shipping and Transit on each and every count of the Complaint;

B.      That Judgment be entered declaring that the accused products and services do not infringe and will not infringe any claims of the Patents-in-Suit;

C.      That Judgment be entered declaring that Shipping & Transit is precluded from obtaining injunctive relief, money damages, enhanced damages, costs and/or attorneys' fees for any alleged infringement by Plaintiffs;

D.      That Judgment be entered declaring the claims of the Patents-in-Suit invalid and/or not directed to patent eligible subject matter;

E.      That Judgment be entered permanently enjoining and restraining Shipping & Transit, its officers, agents, servants, employees, and attorneys, and all others acting for, on behalf of, or in active concert with any of them, from stating, implying, or suggesting that Plaintiffs and/or their products or services infringe the Patents-in-Suit;

F.      That Judgment be entered declaring that this case is exceptional in favor of Plaintiffs under 35 U.S.C. §285, as well the precedent of *Octane Fitness, LLC v. ICON Health & Fitness, Inc*., 134 S. Ct. 1749 (2014) and *Highmark Inc. v. Allcare Health Mgmt. Sys*., 134 S. Ct. 1744 (2014), and accordingly Plaintiff be awarded its reasonable attorneys' fees and expenses;

G.      That Plaintiffs be awarded their costs in this action;

H.      That Plaintiffs be awarded such other and further relief as the Court may deem just and proper;

Pursuant to the Federal Rule of Civil Procedure 38(b), Plaintiff WINN hereby requests a trial by jury of all the issues so triable.

Dated:  January 19, 2017

Respectfully submitted,

**BAUZ IP LAW LLP**

By:＿＿/s/ _N. Thane Bauz_
　　　　N. Thane Bauz

N. Thane Bauz (SBN 188439)
thane@bauziplaw.com
2835 Inverness Drive
La Jolla, CA  92037
Telephone:  (858) 987-4028
Facsimile:  (858) 642-0072

Attorneys for Plaintiff
WINN SOLUTIONS LLC

# TABLE OF CONTENTS OF EXHIBITS

Exhibit A       U.S. Patent No. 7,400,970

Exhibit B       U.S. Patent No. 6,904,359

Exhibit C       U.S. Patent No. 6,415,207

Exhibit D       U.S. Patent No. 6,763,299

Exhibit E       December 14, 2016 Letter from The Marciano Law Firm
                Regarding Shipping & Transit LLC Patent Infringement U.S.
                Patent Nos. 6,415,207; 6,904,350; 6,763,299; 7,400,970

Exhibit F       Settlement, Release and Licensing Agreement